# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| RONALD ADLER and LISA ADLER, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) 17-c-6735 |
| | ) |
| BAYVIEW LOAN SERVICING, LLC and THE BANK OF NEW YORK MELLON, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

**CHARLES P. KOCORAS, DISTRICT JUDGE:**

Now before the Court is Defendants Bayview Loan Servicing, LLC ("Bayview") and Bank of New York Mellon's ("BNY") (collectively, "Defendants"), motion to dismiss Counts I, II, and III of Plaintiffs Ronald and Lisa Adler's (collectively, "the Adlers") Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the reasons set forth below, the motion is granted.

## FACTUAL BACKGROUND

The following facts are taken from the Adlers' Complaint and assumed to be true for purposes of this motion. *Murphy v. Walker,* 51 F.3d 714, 717 (7th Cir. 1995). The Court draws all reasonable inferences in the Adlers' favor. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

The Adlers purchased a home at 2364 Sumac Drive, Yorkville, Illinois ("subject property"). Bayview is a mortgage lender and servicer who previously serviced the Adler's mortgage on the subject property. On September 23, 2005, the Adlers executed a $325,313 mortgage ("subject loan"), with BNY ultimately attaining the interest.[1] Upon retaining interest, BNY employed Bank of America N.A. ("Bank of America") as the servicer.

In 2009, the Adlers defaulted, prompting BNY to file a foreclosure action on September 16, 2010. On February 27, 2012, BNY obtained a judgment of foreclosure and sale in Kendall County.

On or about January 12, 2013, Bank of America offered the Adlers an opportunity to modify their subject loan. The Adlers subsequently submitted the appropriate paperwork and application to Bank of America. On February 20, 2013, Bank of America informed the Adlers that a decision on their pending loan modification would be rendered within thirty days. The Adlers never received a response, however, and BNY sold the subject property in a foreclosure sale sometime in February 2013. On February 21, 2013, the Adlers filed for Chapter 7 bankruptcy, staying the foreclosure proceedings. On May 20, 2013, the bankruptcy case was discharged and subsequently closed on May 31, 2013.

---

[1] The subject loan was a federally related mortgage under 2602(1). The Adlers initially executed the subject loan with KH Financial. KH Financial then assigned its interest to Countrywide, who assigned its interest to BNY.

### A. Bayview Becomes The Loan Servicer

On or about October 21, 2013, Bayview informed the Adlers that it had acquired servicing rights to the subject loan. Everett Beebee ("Beebee"), a Bayview employee, informed the Adlers that they would be required to submit a new loan application, irrespective of previous negotiations with Bank of America. Upon the Adlers' submission of a new application, Bayview canceled its upcoming foreclosure sale. On December 3, 2013, Bayview approved the Adlers for a trial plan under the Home Modification program. As required by the plan, the Adlers made three timely payments of $2,718.20 in January, February, and March of 2014. On March 13, 2014, the Adlers qualified for a Home Affordable Modification Program ("HAMP"), and Bayview proposed terms for a new loan. The Adlers declined this offer and attempted to negotiate for a better loan. The Adlers' negotiation attempts went unanswered.

### B. The Adlers Restart Loan Modification Process with Bayview

After their negotiation attempts went unanswered, the Adlers attempted to follow up with Beebee to inquire about a loan modification. Sometime in June of 2014, the Adlers discovered that Beebee was no longer employed with Bayview and were instructed to submit a new loan modification application. On or about July 3, 2014, the Adlers again submitted a new application, which was approved on August 12, 2014 for a trial plan. Under this trial plan, the Adlers made three timely payments of $2,590.93 in September, October, and November of 2014. On December 15, 2014, Bayview

offered the Adlers a permanent loan modification. To the Adlers' dismay, Bayview's offer failed to account for language preventing Bayview from re-establishing any personal liability for the underlying debt acquired from their Chapter 7 bankruptcy discharge. As a result, the Adlers declined Bayview's offer.

**C.     The Adlers Send The Defendants Qualified Written Requests To Negotiate The December 15, 2014 Offer, But Bayview Fails To Timely Respond**

On January 13, 2015, the Adlers sent Bayview a qualified written request ("QWR") seeking clarification of the December 15, 2014 modification offer. On March 12, 2015, Bayview responded with information that was false, confusing, and vexatious. On March 26, 2015, the Adlers responded, noting the defects in Bayview's response and requesting clarification of the modification offer. Bayview responded on April 28, 2015 with a letter containing similar defects as before. On June 2, 2015, the Adlers sent a third letter, again asking for clarification.

The Adlers did not receive a response to their June 2 letter. Instead, on August 18, 2015, Bayview sent the Adlers a notice informing them of a sheriff's sale scheduled for September 28, 2015.

**D.     The Adlers File a Motion To Stay The Foreclosure Sale**

The Adlers moved the state court to stay the sheriff's sale and for leave to file counterclaims. At a September 16, 2015 hearing on the motion, the Adlers alleged a breach of contract stemming from the loan modification process. Specifically, the Adlers alleged BNY refused to negotiate in good faith, resulting in a loss of $7,772.79.

The Defendants argued that the Adlers' proposed counterclaims were unrelated to BNY's right to foreclose, noting that the counterclaim only sought monetary damages.

The court denied the Adlers' motion, stating that "[i]f this was a counterclaim that was filed in [the Adlers'] motion with[in] the twenty days of pleading, I would still hear the case because I do think this issue is germane to a foreclosure case." However, the court, citing judicial discretion, stated it could not "allow [the Adlers] to file a counterclaim based on something that [the Adlers] [had] known from nine months before." Accordingly, the court declined to rule on the substance of the Adlers' counterclaim, and denied the motion citing judicial discretion.

The foreclosure sale commenced on September 28, 2015, and on November 2, 2015, BNY moved to confirm the sale and take possession of the subject property. The Adlers were subsequently evicted.

## **PROCEDURAL BACKGROUND**

On December 4, 2017, the Adlers filed an Amended Complaint against Bayview and BNY under the theory of vicarious liability. The Adlers' three-count Complaint against the Defendants set forth the following causes of action: Count I, violation of the Real Estate Settlement Procedures Act § 10241(g) ("RESPA"), flowing from the invalid foreclosure of their home; Count II, violation of RESPA under § 2605(e)(1)(B), flowing from the Defendants' failure to timely respond to the Adlers' QWRs; and Count III, violation of the Illinois Consumer Fraud Act ("ICFA"), alleging HAMP violations

5

stemming from the Adlers paying $15,927.39 in trial payments, but not obtaining permanent loan modification.

The Defendants filed the instant motion on January 8, 2018 under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. The Defendants seek dismissal of all three counts.

## LEGAL STANDARD

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) "tests the sufficiency of the complaint, not the merits of the case." *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th Cir. 2012). The allegations in the Complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Plaintiffs need not provide detailed factual allegations, but must provide enough factual support to raise their right to relief above a speculative level. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A claim must be facially plausible, meaning that the pleadings must "allow…the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The claim must be described "in sufficient detail to give the defendant 'fair notice of what the…claim is and the grounds upon which it rests.'" *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "Threadbare recitals of the

elements of a cause of action, supported by mere conclusory statements," are insufficient to withstand a 12(b)(6) motion to dismiss. *Iqbal*, 556 U.S. at 678.

A motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure challenges a court's subject matter jurisdiction. Under Rule 12(b)(1), the plaintiff bears the burden of establishing that the court has jurisdiction over its claims. *United Phosphorous Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003) (en banc). The Court may consider matters outside of the Complaint in ruling on a motion to dismiss for lack of subject matter jurisdiction. *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995).

## DISCUSSION

I. **Subject Matter Jurisdiction**

　　A. **The *Rooker-Feldman* Doctrine**

The Defendants' first contention is that this Court lacks jurisdiction to adjudicate these claims under the *Rooker-Feldman* doctrine. The *Rooker-Feldman* doctrine, derived from *Rooker v. Fidelity Trust Company*, 263 U.S. 413 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), "precludes lower federal court jurisdiction over claims seeking review of state court judgments . . . [because] no matter how erroneous or unconstitutional the state court judgment may be, the Supreme Court of the United States is the only federal court that could have jurisdiction to review a state court judgment." *See Brokaw v. Weaver*, 305 F.3d 660, 664 (7th Cir. 2002).

Thus, "if a claim is barred by the *Rooker-Feldman* doctrine, a federal court lacks subject matter jurisdiction over the case." *Id.*

The immediate inquiry in evaluating *Rooker-Feldman* is "whether the federal plaintiff seeks to set aside a state court judgment or whether [they are], in fact, presenting an independent claim." *Kamilewicz v. Bank of Boston Corp.*, 92 F.3d 506, 510 (7th Cir. 1996). Simply put, the *Rooker-Feldman* doctrine controls, and this Court lacks jurisdiction, if "the federal plaintiff alleges [injuries] result[ing] from the state court judgment itself." *Id.* However, impermissible appellate review may also occur if the claims "are inextricably intertwined with the state court determinations." *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999). Accordingly, if the claims are inextricably intertwined, the next inquiry asks whether the Plaintiffs "had a reasonable opportunity to raise the issues in state court proceedings." *Jakupovic v. Curran*, 850 F.3d 898, 904 (7th Cir. 2017).

"The 'reasonable opportunity' inquiry focuses not on ripeness, but on difficulties caused by 'factor[s] independent of the actions of the opposing part[ies] that precluded' a plaintiff from bringing federal claims in state court, such as state court rules or procedures." *Curran*, 850 F.3d at 904 (quoting *Long*, 182 F.3d at 558). Therefore, we must determine whether the Adlers' claims are inextricably intertwined with the state court's judgments, and if so, whether the Adlers had a reasonable opportunity to raise their issues in state court.

The state court entered an order of foreclosure and sale on February 27, 2012, and an order of possession on November 2, 2015. Now, the Adlers are attempting to collaterally attack the state court's judgment by arguing that the foreclosure sale was improper under RESPA and ICFA violations. The Adlers' request for relief is inextricably intertwined with the Defendants' prior foreclosure proceedings.

The Adlers' situation is similar to the plaintiff in *GASH Assocs. v. Vill. of Rosemont, Ill.*, 995 F.2d 726 (7th Cir. 1993), where a plaintiff filed a § 1983 suit after being dissatisfied with the state court's confirmation of the sale of its property. *Id.* at 729. The Seventh Circuit determined that *Rooker-Feldman* applied because the plaintiff was essentially seeking review of the foreclosure judgment. *Id.* Like the *GASH* plaintiff, the Adlers "did not suffer an injury out of court and then fail to get relief from state court; [their] injury came from the judgment confirming the sale" of the property. *Id.*

In the foreclosure proceeding on September 16, 2015, the Adlers argued that the sale of the subject property should be stayed because of the Defendants' breach of contract in the loan modification process. In this Amended Complaint, the Adlers outright assert that "[a]s a direct and proximate result of Defendant's misconduct, Plaintiffs lost their family home." However, a district court cannot vacate the foreclosure judgment, and the Adlers' request for relief is putting this Court in a position of appellate review, which *Rooker-Feldman* prohibits.

We also find that the Adlers had a reasonable opportunity to raise their claims in state court "because state and federal courts have concurrent jurisdictions over RESPA." *Byrd v. Homecomings Fin. Network*, 407 F. Supp. 2d 937, 943 (N.D. Ill. 2005) (citing *Weatherman v. Gary-Wheaton Bank of Fox Valley, N.A.*, 186 Ill. 2d 472, 481 (1119)) (ruling on the merits of plaintiff's RESPA claims). In fact, the Adlers did raise their concerns to the state court in the foreclosure proceedings. The state court denied these claims, in part because the Adlers had already been aware of them for nine months. Even after the foreclosure sale on September 28, 2015, the Adlers had over a month to raise their claims in state court before the state court entered its final judgment confirming the sale on November 2, 2015. Now, instead of appealing the state court's decision, or filling these claims within those initial nine months, the Adlers are attempting to collaterally attack the foreclosure judgment by filing these RESPA claims.

Even assuming that the Adlers are asserting an independent cause of action, because the claimed injuries resulted from the foreclosure proceedings, this court lacks jurisdiction to adjudicate their claims. Accordingly, because the Adlers have not demonstrated any barriers that prevented them from bringing their claims in state court, this Court lacks jurisdiction under *Rooker-Feldman*.

## II.     Count III - State Claims

Count III alleges that the Defendants violated the Illinois Consumer Fraud Act and HAMP. Specifically, the Adlers paid $15,927.39 in trial payments, but failed to

obtain a permanent loan modification because the Defendants negotiated in bad faith. First, we note that HAMP does not confer a federal right of action. *See Wigon v. Wells Fargo Bank, N.A.*, 673 F.3d 547 (7th Cir. 2012). Accordingly, 28 U.S.C. § 1367 of the allows a federal district court to exercise supplemental jurisdiction over state law claims only if the court has original jurisdiction. Because the Court is dismissing the Adlers' federal claims, we decline to exercise supplemental jurisdiction over their state claims.

## **CONCLUSION**

For the aforementioned reasons, the Court grants the motion to dismiss. The Adlers' Amended Complaint is dismissed with prejudice.

Dated: 9/18/2018

_____
Charles P. Kocoras
United States District Judge